Cite as 2019 Ark. App. 484

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-19-89

| | |
|---|---|
| | **Opinion Delivered:** October 23, 2019 |
| STEPHANIE CORDERO | APPEAL FROM THE SALINE |
| APPELLANT | COUNTY CIRCUIT COURT |
| | [NO. 63CR-17-637] |
| V. | |
| | HONORABLE BARBARA WEBB, |
| | JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Stephanie Cordero appeals after she was convicted by the Saline County Circuit Court of driving while intoxicated (DWI) after a bench trial. She was sentenced to five days in the Saline County Jail and a $1000 fine. On appeal, appellant's sole argument is that there was insufficient evidence to convict her of DWI. We affirm.

I. *Relevant Facts*

Appellant was driving home after shopping in Saline County the afternoon of November 9, 2016. After appellant admittedly ran a red light, a private citizen forced her to pull over by blocking her on the road until law enforcement could respond. After law enforcement arrived and observed her behavior at the scene, she was arrested and charged with DWI in violation of Arkansas Code Annotated section 5-65-103(a)(1) (Repl. 2016). After appellant was found guilty by the Saline County District Court, she appealed to circuit court. The circuit court held a bench trial on September 27, 2018.

At trial, Sergeant Hanley Taylor testified that he was the first to respond to the scene. He noticed that appellant was really disoriented, her eyes were glossy, and her speech was broken. Because he did not smell any odor of alcohol, he requested the assistance of a drug recognition expert (DRE). Officer Michael McClain, a trained DRE, responded.

Officer McClain testified that he observed that appellant's speech was slurred, her eyes were glazed over and watery, and her movements were slow and sluggish. After conducting field-sobriety tests at the scene, Officer McClain opined that appellant was under the influence and unable to operate her motor vehicle safely. He testified that although he initially allowed appellant to see if she could obtain a ride home, when she was unable to do so, he took her into custody. A video of appellant's transport to the Saline County Sheriff's Office was admitted into evidence.

McClain testified that while at the Saline County Sheriff's Office, appellant consented to a twelve-step drug-influence evaluation. During the evaluation, appellant admitted to Officer McClain that she had been prescribed Flexeril, Lorazepam, Zofran, and Fioricet. Appellant told the officer that she had a bad migraine headache the night before and that she had taken Fioricet around midnight. Appellant then stated that when she awoke the following morning, she still had a migraine headache and that around 8:00 a.m. she took two additional Fioricet pills. Further, appellant stated that in addition to the two Fioricet pills she took that morning, she had also taken four over-the-counter pseudoephedrine pills for sinus issues. McClain testified that later in the evaluation, appellant changed her story and stated that she did not remember whether she took Fioricet that morning. Officer McClain stated that appellant continued to exhibit general indicators

2

of impairment throughout the entire evaluation and that Fioricet is classified as a CNS depressant. Thus, it was his expert opinion that appellant was under the influence of CNS depressants and unable to operate a motor vehicle safely.

Eric Westhafer from the Arkansas State Crime Laboratory testified that appellant's urine sample tested positive for barbiturates. She tested negative for other drugs. However, Mr. Westhafer stated that pseudoephedrine would not have showed up on that particular drug screen unless it was a very large amount. Although appellant tested positive for barbiturates, he could not tell from the test when the drug had been introduced into her body.

Cody Miller, a board-certified pharmacist, testified that Fioricet is used to treat migraines and is a barbiturate. Mr. Miller explained that when someone is given a prescription for Fioricet, the bottle would contain certain warnings, including that the medication may cause drowsiness and dizziness. Additionally, it would warn appellant not to drink alcohol and to use care when operating a vehicle, a vessel, or other machinery. Although Mr. Miller admitted he did not know what appellant's prescription-medication bottle actually stated, he testified that there should have been a warning label about operating a vehicle regardless of the length of time appellant had been prescribed the medication.

After the State rested its case, appellant moved for a dismissal on the basis that the State failed to make a prima facie case. She specifically argued that the State failed to prove the required culpable mental state—that appellant acted purposely, knowingly, or recklessly—pursuant to our supreme court's decision in *Leeka v. State*, 2015 Ark. 183, 461 S.W.3d 331. The State responded that the culpable mental state is strict liability. The trial

court denied appellant's motion to dismiss, "finding that . . . it is a strict liability offense, but I think the fact that she was in the traffic lane with a vehicle under the influence is sufficient to satisfy any *mens rea*, especially as direct recklessness – – reckless conduct[.]"

Appellant's ex-husband, Christopher Cordero, testified on her behalf. He described appellant's long history with migraines and stated that her migraines would cause her to become disoriented and slur her speech. Mr. Cordero further testified that sometimes she would experience vertigo with her migraines and would need to take injections.

Dr. Daniel Dorman, appellant's physician, testified that he had prescribed appellant Fioricet as treatment for her migraines. Appellant's April 22, 2016 prescription with three refills directed her to "TAKE 1 TABLET BY MOUTH EVERY FOUR HOURS AS NEEDED FOR HEADACHE/NO MORE THAN 6 PER 24 HOURS." Dr. Dorman testified that Fioricet is a barbiturate and would cause a positive urine screen for barbiturates. Although he did not recollect appellant's reporting that her migraines caused her to randomly fall asleep or experience vertigo, he had not seen or treated appellant in two and a half years.

Appellant testified that she is a registered nurse and suffers from migraines. During a migraine, she experiences symptoms of sensitivity to light, nausea, vomiting, vertigo, dizziness, and feeling disconnected. Appellant explained that a migraine started the evening before her arrest. She took two Fioricet pills around 8:00 p.m. and another two Fioricet pills around midnight. When she woke up at 6:00 the morning of her arrest, her head still hurt. However, appellant denied taking any more Fioricet pills and instead left at 8:00 a.m. to go shopping for a friend's bridal shower. She testified that she left her home in

4

Arkadelphia and first stopped at Target in Bryant. From there, she traveled to the Outlets of Little Rock. Because her migraine symptoms had worsened, and because caffeine would sometimes help, she decided to stop on her way home to purchase a Diet Dr. Pepper at the Sonic in Benton. Appellant testified that because her head hurt and she was having difficulty focusing, she ran a red light after she left Sonic and was pulled over by a private citizen who blocked her access to the interstate and yelled at her to stop. Appellant denied telling Officer McClain that she had taken any Fioricet pills that morning. Instead, appellant stated that she had told Officer McClain that she only took pseudoephedrine and ibuprofen that morning. Finally, appellant testified that it was her opinion that she was not under the influence of any medication to the point that she could not safely drive her vehicle.

At the conclusion of the trial, appellant renewed her motion for dismissal, and the trial court denied her motion. The trial court found appellant guilty and sentenced her to serve five days in the Saline County Jail and imposed a fine of $1000. This timely appeal followed.

## I. *Sufficiency of the Evidence*

A motion to dismiss at a bench trial, like a motion for directed verdict at a jury trial, is a challenge to the sufficiency of the evidence. *See Gill v. State*, 2015 Ark. 421, 474 S.W.3d 77; Ark. R. Crim. P. 33.1 (2018). The test for determining the sufficiency of the evidence is whether substantial evidence, direct or circumstantial, supports the verdict. *Id.* Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or the other and pass beyond mere suspicion or conjecture. *Id.* Circumstantial evidence may constitute substantial evidence to support a conviction. *Id.* The longstanding rule in

5

the use of circumstantial evidence is that to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *Id.* Such a determination is a question of fact for the trier of fact to determine. *Thornton v. State*, 2014 Ark. 157, 433 S.W.3d 216. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* On appeal, this court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Gill*, *supra*.

It is unlawful for a person who is intoxicated to operate or be in actual physical control of a motorboat on the waters of this state or a motor vehicle. Ark. Code Ann. § 5-65-103(a)(1). "Intoxicated" means influenced or affected by the ingestion of alcohol, a controlled substance, any intoxicant, or any combination of alcohol, a controlled substance, or an intoxicant, to such a degree that the driver's reactions, motor skills, and judgment are substantially altered and the driver, therefore, constitutes a clear and substantial danger of physical injury or death to himself or herself or another person. Ark. Code Ann. § 5-65-102(4).

Appellant argues that the trial court applied the incorrect culpable-mental-state requirement of strict liability. Instead, appellant argues that the trial court was required to apply the following culpable mental state in accordance with Arkansas Code Annotated section 5-2-203 (Repl. 2013):

> (b) Except as provided in §§ 5-2-204(b) and (c), if the statute defining an offense does not prescribe a culpable mental state, a culpable mental state is nonetheless required and is established only if a person acts purposely, knowingly, or recklessly.

Ark. Code Ann. § 5-2-203(b). In *Leeka*, our supreme court held that the DWI statute requires a culpable mental state of purposely, knowingly, or recklessly. *Leeka*, *supra*. In response to *Leeka*, the legislature added subsection (c) to Arkansas Code Annotated section 5-65-103, which makes an "alcohol-related offense" a "strict liability offense." *Tackett v. State*, 2017 Ark. App. 271, at 4, 523 S.W.3d 360, 362. However, because there was no allegation of alcohol consumption in this case, the State agrees with appellant that subsection (c) would not apply and that a culpable mental state of purposely, knowingly, or recklessly is required in accordance with section 5-2-203(b) and *Leeka*.

In this case, it is clear from our record that although the trial court incorrectly held during appellant's motion to dismiss that the applicable culpable mental state was strict liability, it also made an alternative finding under the correct standard that the State had submitted proof "sufficient to satisfy any mens rea," and in particular "reckless conduct." Recklessly is defined as follows:

> (A) A person acts recklessly with respect to attendant circumstances or a result of his or her conduct when the person consciously disregards a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur.

> (B) The risk must be of a nature and degree that disregard of the risk constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation[.]

Ark. Code Ann. § 5-2-202(3). This court has noted that a criminal defendant's intent or state of mind is seldom apparent. *Rose v. State*, 2018 Ark. App. 446, 558 S.W.3d 415. One's intent or purpose, being a state of mind, can seldom be positively known to others, so it ordinarily cannot be shown by direct evidence but may be inferred from the facts and circumstances. *Id*. Because intent cannot be proved by direct evidence, the fact-finder is

allowed to draw on common knowledge and experience to infer it from the circumstances. *Id.* Because of the difficulty in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his or her acts. *Id.*

Officer McClain testified that appellant told him she had taken Fioricet pills at midnight and then took two more Fioricet pills around 8:00 a.m., along with four over-the-counter pseudoephedrine pills. Two Fioricet pills is double the prescribed amount, as evidenced by appellant's written prescription that directed her to take only one pill every four hours. Although appellant now denies taking Fioricet at 8:00 a.m., the trier of fact was free to believe all or part of any witness's testimony and resolve questions of conflicting testimony and inconsistent evidence. *Thornton, supra.* After taking double the prescribed amount of Fioricet and four over-the-counter pseudoephedrine pills, appellant subsequently chose to drive from Arkadelphia to go shopping in Bryant, Little Rock, and Benton. Appellant acknowledged that her symptoms worsened throughout the day, and even though she admitted that she knew she was having difficulty focusing when she was at Sonic, she still chose to drive in her impaired state. It is also relevant that appellant was sufficiently aware of her condition that she stopped at Sonic to purchase a caffeinated drink.

Mr. Miller, a board-certified pharmacist, testified that Fioricet is a barbiturate, and appellant's drug screen confirmed that she tested positive for barbiturates. Further, Mr. Miller testified that appellant would have been warned that Fioricet could impair her driving ability, and in this case, appellant was actually stopped by a private citizen after running a red light due to her impaired state. Moreover, Sergeant Taylor and Officer McClain

described appellant as disoriented, glossy eyed, and having speech issues. Therefore, after conducting a drug-influence evaluation, it was Officer McClain's opinion that appellant was under the influence of a CNS depressant, which prevented her from operating a motor vehicle safely. Viewing all this evidence in the light most favorable to the State, and considering only the evidence that supports the verdict, we hold that there was sufficient evidence to support a culpable mental state of "recklessly" under this particular set of facts. Thus, the trial court did not err in denying appellant's motion to dismiss, and we affirm appellant's conviction.

Affirmed.

KLAPPENBACH and BROWN, JJ., agree.

*Hancock Law Firm*, by: *Charles D. Hancock*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Chris R. Warthen*, Ass't Att'y Gen., for appellee.